**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

WAYNE PENN SCHAFER, TRUSTEE OF
THE WAYNE PENN SCHAFER
SEPARATE PROPERTY TRUST
ESTABLISHED OCTOBER 5, 1982, AS
AMENDED AND RESTATED ON JULY
9, 2007,

               Plaintiff,

v.

CENTERPOINT ENERGY OKLAHOMA
GAS, d/b/a CENTERPOINT ENERGY
RESOURCES, CORP.,

               Defendant.

Case No. 17-CV-365-GKF-FHM

## **ORDER**

Before the court are the *Motion for Summary Judgment* [Doc. No. 63][1] of the defendant,

CenterPoint Energy Oklahoma Gas, d/b/a CenterPoint Energy Resources, Corp.; and the *Motion*

*for Partial Summary Judgment on Liability for Trespass Claim*, the *Motion to Determine*

*CenterPoint Has No Easement*, and the *Motion for a Permanent Injunction* [Doc. Nos. 66; 67][2]

of the plaintiff, Wayne Penn Schafer, Trustee of the Wayne Penn Schafer Separate Property

Trust Established October 5, 1982, as amended and restated on July 9, 2007.

### I.      Procedural Background

The dispute in this case concerns CenterPoint's alleged liability for owning and operating

a natural gas pipeline that crosses Schafer's property in Osage County, Oklahoma.  On May 19,

---

[1]      Upon review, CenterPoint's motion appears to seek partial summary judgment, as it does not address Schafer's nuisance claim.  The court will therefore refer to CenterPoint's motion as a motion for partial summary judgment.

[2]      Schafer filed three separate motions in a single document.  The court will address the first two motions—the *Motion for Partial Summary Judgment on Liability for Trespass Claim* and the *Motion to Determine CenterPoint Has No Easement*—together.

2017, Schafer filed a petition in the District Court in and for Osage County bringing claims against CenterPoint for:  (1) unjust enrichment; (2) trespass; and (3) nuisance.[3]  [Doc. No. 1-1]. CenterPoint subsequently removed the case to federal court pursuant to 28 U.S.C. § 1332.  [Doc. No. 1].

## II.    Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*  Further, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

In considering a motion for summary judgment, "[t]he evidence and reasonable inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party." *Stover v. Martinez,* 382 F.3d 1064, 1070 (10th Cir. 2004).  "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Anderson,* 477 U.S. at 249).  Summary judgment is appropriate only "where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[3]     Although Schafer also plead punitive damages as a separate cause of action, "[a] plea for punitive damages is generally considered to be an element of recovery of the underlying cause of action; it does not constitute a separate cause of action." *Rodebush ex. rel. Rodebush v. Okla. Nursing Homes, Ltd*., 867 P.2d 1241, 1247 (Okla. 1993).

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Stover,* 382 F.3d at 1070 (quoting FED. R. CIV. P. 56(c)).

### III.    Undisputed Material Facts

Schafer is the owner of an 80-acre parcel of rural, undeveloped property located in Osage County near Hominy, Oklahoma.  [DUMF ¶ 2; PUMF ¶ 1].  Schafer's father received the surface estate in 1906 as an original allottee, pursuant to the Osage Allotment Act of June 28, 1906. [DUMF ¶¶ 9–10; PUMF ¶¶ 3–5].  Schafer inherited the property after his father's death in 1932. [DUMF ¶ 10; PUMF ¶ 4–5].  In 2007, Schafer conveyed the property to his trust by a general warranty deed which represented the conveyance to be "in fee simple . . . free, clear, discharged, and unencumbered of and from all former grants, titles, charges, judgments, taxes, assessments and encumbrances . . . ."  [Doc. No. 42-3].

Since 1948, CenterPoint (or one of its predecessor entities) has owned and operated a natural gas pipeline (Line 7-1) that crosses Schafer's property for approximately 1500 feet. [DUMF ¶¶ 2, 4, 8].  In 1993, CenterPoint installed three yellow markers on Schafer's property denoting Line 7-1's location and bearing CenterPoint's name and contact information.  [DUMF ¶¶ 5, 7].  According to Schafer's tenant, the markers have been clearly visible since he began leasing the property in 2010.  [Doc. No. 63-12].  CenterPoint's employees and independent contractors have regularly entered Schafer's property to monitor the pipeline, and CenterPoint has sent service technicians to walk Line 7-1 at least once per year.  [DUMF ¶¶ 6–7].

In late 2010 or early 2011, CenterPoint discovered through an internal review that it did not have a written easement for Line 7-1 to cross Schafer's property.  [DUMF ¶ 12; PUMF ¶ 8]. When CenterPoint contacted Schafer about procuring an easement, it learned he was unaware of Line 7-1's presence on his property.  [DUMF ¶ 13; PUMF ¶ 14].  Schafer is a lifelong resident of

Southern California and, at the time of his deposition, had not been back to Oklahoma in over four decades.  [DUMF ¶ 1; PUMF ¶ 14].

CenterPoint has attached internal business records showing that, in 1948, its predecessor caused to be appraised "the right-of-way and damages incident thereto, resulting by reason of location of the [] pipe line" through certain restricted Indian lands.  [Doc. No. 63-1, p. 3].  The appraisal applicable to Schafer's property was $46.50.  *Id.*  Schafer denies that he ever received payment from CenterPoint and denies that the documents contain language of conveyance or Schafer's signature.  [PUMF ¶¶ 10–12].

## IV.    CenterPoint's Motion for Partial Summary Judgment [Doc. No. 63]

CenterPoint seeks partial summary judgment on four issues:  (1) that Oklahoma state law, not Federal common law, is the appropriate rule of law for this matter; (2) that CenterPoint has a prescriptive easement over Schafer's property; (3) that Schafer is not entitled to unjust enrichment/disgorgement; and (4) that Schafer is not entitled to punitive damages.[4]

### 1.    *Choice of Law*

CenterPoint first seeks partial summary judgment that Oklahoma state law, not Federal common law, is the appropriate rule of law for this matter.  *See* [Doc. No. 63, pp. 19–22].  This issue turns on whether Schafer's property is, or was at any relevant time, "Indian country" under 18 U.S.C. § 1151.  Section 1151 is "a major jurisdictional predicate for the application of much of federal Indian law."[5]   Cohen's Handbook of Federal Indian Law § 9.02[1][b] (Nell Jessup Newton ed., 2012) (hereinafter, Cohen's Handbook).   Furthermore, "federal common law governs [] action[s] for trespass on Indian lands," *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1282

---

[4]       The court has reversed the order of CenterPoint's first two issues for organizational reasons.

[5]       "While [§] 1151 is concerned, on its face, only with criminal jurisdiction, the Court has recognized that it generally applies as well to questions of civil jurisdiction."  *DeCoteau v. Dist. Cty. Court for Tenth Judicial Dist.*, 420 U.S. 425, 427 n.2 (1975).

(10th Cir. 2010) (quoting United *States v. Milner*, 583 F.3d 1174, 1182 (9th Cir. 2009)), and "[t]here is no federal statute of limitations [for] federal common-law actions by Indians to enforce property rights." *Cty. of Oneida, N.Y. v. Oneida Indian Nation of N.Y. State*, 470 U.S. 226, 240 (1985).

Section 1151 defines Indian country as "[(a)] all land within the limits of any Indian reservation under the jurisdiction of the United States Government, [(b)] dependent Indian communities, and [(c)] all Indian allotments, the Indian titles to which have not been extinguished."[6]   Cohen's Handbook § 9.02[1][b].   Here, the only issue is whether Schafer's property qualifies as an Indian allotment under subsection (c).[7]   "The term 'Indian allotment' has a reasonably precise meaning, referring to land owned by individual Indians and either held in trust by the United States or subject to a statutory restriction on alienation."   Cohen's Handbook § 3.04[2][c][iv] (emphasis added); *see also United States v. Sands*, 968 F.2d 1058, 1061–62 (10th Cir. 1992) (noting that, by the time § 1151(c) was enacted, Indian country "included both trust allotments and restricted fee allotments").   "In contrast, lands that are owned in fee without such restrictions on alienation do not qualify as Indian country under § 1151(c)." *Yankton Sioux Tribe v. Gaffey*, 188 F.3d 1010, 1022 (8th Cir. 1999).

---

[6]     18 U.S.C. § 1151 states:

> Except as otherwise provided in sections 1154 and 1156 of this title, the term "Indian country", as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

[7]     Schafer also argues subsection (a) applies, on the basis that Congress never disestablished the Osage Reservation.  However, this argument is foreclosed by the Tenth Circuit's holding in *Osage Nation v. Irby* that "the Osage reservation has been disestablished by Congress."  597 F.3d 1117, 1127 (10th Cir. 2010); *see also Murphy v. Royal*, 866 F.3d 1164, 1221 (10th Cir. 2017) (discussing *Osage Nation* and reiterating Congress' disestablishment of the Osage Reservation).  Neither party argues subsection (b) applies.

The Osage Allotment Act of June 28, 1906, allotted the surface estate of the then-extant Osage reservation in severalty to tribal members. *See* Cohen's Handbook § 4.07[1][d], p. 305. The allotments to tribal members were "restricted fee" lands, alienable only as permitted by federal statute and the Secretary of Interior. *Id.* at 306. The 1906 Act also authorized the issuance of "certificates of competency" to tribal members, which, when issued, terminated the restrictions on alienation. *Id.* at 307. In 1948, Congress mandated the issuance of certificates of competency and the removal of restrictions on alienation for Osage tribal members of less than one-half Indian blood upon reaching the age of 21. *Id.* at 307 n.166.

Here, Schafer's father was an original Osage allottee who received the property in restricted fee. Thus, in 1906, the property was Indian country under § 1151(c).

In Schafer's *Motion to Determine Proper Measure of Damages and Rules for Decision*, Schafer's counsel stated that Schafer received his certificate of competency in 1950.[8] *See* [Doc. No. 42, p. 18]. Upon the issuance of that certificate of competency, the restrictions on alienation were terminated and the property ceased to qualify as Indian country under § 1151(c). The portion of Schafer's trespass claim arising after that point is governed by state law, although federal common law governs the portion of Schafer's trespass claim that may be said to have arisen before that point in time. Therefore, CenterPoint's motion for partial summary judgment that Oklahoma state law, not Federal common law, is the appropriate rule of law for this matter is granted in part and denied in part.

---

[8]     Although "[b]riefs are not a part of the record," in its discretion the court will consider this prior statement by Schafer's attorney as an admission for summary judgment purposes. *Plastic Container Corp. v. Continental Plastics of Oklahoma, Inc.*, 607 F.2d 885, 906 (10th Cir. 1979) (acknowledging that courts have the discretion to consider a party's statement in a brief as an admission).

2.      *Prescriptive Easement*

Next, CenterPoint seeks partial summary judgment on its affirmative defense of prescriptive easement.[9]  *See* [Doc. No. 63, pp. 11–18].  In Oklahoma, easements may be acquired by prescription.  *Frater Okla. Realty Corp. v. Allen Laughon Hardware Co.*, 245 P.2d 1144, 1147 (Okla 1952); *see also* 60 O.S. § 333.  "The requirements for an easement by prescription are generally the same as those for acquiring title by adverse possession."  *Willis v. Holley*, 925 P.2d 539, 540 (Okla. 1996).

> To establish adverse possession, the claimant must show that possession was [1] hostile, [2] under a claim of right or color of title, [3] actual, [4] open, [5] notorious, [6] exclusive, and [7] continuous for the statutory period of fifteen years.  The party claiming title adversely has the burden of proving every element by clear and positive proof.  In questionable cases, presumptions favor the record title holder.

*Akin v. Castleberry*, 286 P.3d 638, 642–43 (Okla. 2012).  "Contrary to what one might think, the element of 'hostility' does not go to the state of mind of the claimant, but rather the nature, viewed objectively, of the claimant's possession.  The essence is that the claimant's possession must be hostile to, or clearly inconsistent with, ownership by the record owner."  Malcolm E. Rosser IV & Elizabeth Moseley Guse, *Adverse Possession in Oklahoma: An Idea Whose Time Has Come and Gone?* 72 Okla. Bar Journal 713, 714 (2001).  "If the owner acquiesces in or consents to the use of the land, then the use is not adverse and title by prescription cannot be acquired."  *Willis*, 925 P.2d at 541; *see also Zimmerman v. Newport*, 416 P.2d 622, 629–30 (Okla. 1966) ("However exclusive and however long endured, permissive possession can never ripen into title . . . .  Possession under a license or agreement granting the right of occupancy is

---

[9]      Schafer argues CenterPoint's affirmative defense of prescriptive easement should have been raised in a counterclaim.  *See* [Doc. No. 74, p. 5].  However, prescriptive easement is commonly raised as an affirmative defense.  *See, e.g., Weyerhaeuser Co. v. Brantley*, 510 F.3d 1256, 1260–61 (10th Cir. 2007) (allowing defendant to raise adverse possession or prescriptive easement as affirmative defenses to plaintiff's claims for trespass, ejectment, and declaratory relief).

not adverse; the license or agreement precludes the possibility of a claim of adverse possession."). "[W]here the use is initially permissive, the burden of showing that the permissive use ceased is on the party claiming adversely." *Willis*, 925 P.2d at 54; *see also Irion v. Nelson*, 249 P.2d 107, 111 (Okla. 1952) ("If the use originates by permission or license and an easement by prescription is claimed, the burden of proving that the permissive use had ceased and that the use for the necessary period had been adverse under claim of right is on the party asserting the act of adverse use, and in case of doubt, such fact will be resolved against him.").

Here, genuine issues of material fact exist regarding CenterPoint's affirmative defense of prescriptive easement. Such issues include, but are not limited to, whether CenterPoint's predecessor's use of Schafer's property was initially by acquiescence or consent. As Schafer points out, CenterPoint's own evidentiary materials raise a genuine dispute as to whether its predecessor's use of Schafer's property was initially by acquiescence or consent. CenterPoint has produced seventy year old business records indicating that CenterPoint's predecessor in interest caused an appraisal to be done on Schafer's property which was then in restricted status.[10] *See* [Doc. No. 63-1]. CenterPoint relies on these business records in its response to Schafer's motion for partial summary judgment to argue that, "[w]hile CenterPoint does not have a current, written easement, [its] prior business records imply payment, and therefore consent, to CenterPoint's presence on [Schafer's] land." [Doc. No. 76, p. 12]. In addition, the burden is on CenterPoint to show when any permissive use of Schafer's property ceased, *see Willis*, 925 P.2d at 541, and CenterPoint has provided no evidence to that effect. In fact, CenterPoint was under the impression it had an easement over Schafer's property until late 2010 or early 2011. *See* [DUMF ¶ 12 (citing Doc. No. 63-10, p. 2)].

---

[10] The parties have not briefed the issue of whether Schafer, prior to the issuance of a certificate of competency in 1950, could have legally acquiesced or consented to the use of the property.

CenterPoint's motion for partial summary judgment on its affirmative defense of prescriptive easement is denied.

### 3.    Unjust Enrichment

CenterPoint moves for partial summary judgment that Schafer is not entitled to equitable relief on its cause of action for unjust enrichment.  *See* [Doc. No. 63, pp. 22–25].  "The elements of unjust enrichment are:  (a) an enrichment to the adverse party; (b) an impoverishment to the claimant; (c) connection between the enrichment and impoverishment; (d) an absence of justification; and (e) an absence of remedies at law."  *Quarles v. Little River Energy Co.*, No. 00-CV-913-GKF-PJC, 2008 WL 185715, at *1–2 (N.D. Okla. Jan. 18, 2008).  "Disgorgement is . . . an equitable remedy, the purpose of which is not to compensate an aggrieved party, but to deprive the alleged wrongdoer of any ill-gotten gains."  *Hitch Enters., Inc. v. Cimarex Energy Co.*, 859 F. Supp. 2d 1249, 1258 (W.D. Okla. 2012).

Schafer brought a claim of unjust enrichment against CenterPoint for its alleged use of his property without adequate compensation, and requested disgorgement of CenterPoint's entire profit associated with Line 7-1, which Schafer estimated to be in excess of $1,000,000.00.  [Doc. No. 1-1, p. 2, ¶¶ 7–15].   In response, CenterPoint argues Schafer is not entitled to unjust enrichment/disgorgement because:  (a) he has an adequate remedy at law; and (b) he has unclean hands.

### a.    Adequate Remedy at Law

CenterPoint argues Schafer's trespass and nuisance claims provide an adequate remedy at law.  In Oklahoma, "a party is not entitled to pursue a claim of unjust enrichment when it has an adequate remedy at law."  *Am. Biomedical Grp., Inc. v. Techtrol, Inc.*, 374 P.3d 820, 828 (Okla. 2016).  "A suit in equity will not lie where the plaintiff has a plain, adequate and complete

remedy at law." *Quarles*, 2008 WL 185715 at *2 (citing *Missouri-Kansas-Texas R. Co. v. Williamson*, 36 F. Supp. 607, 610 (W.D. Okla. 1941)).  At this stage of the case, the court is not persuaded that Schafer's claims of trespass and nuisance provide an adequate remedy at law.

                   b.     Unclean Hands

CenterPoint argues Schafer has unclean hands for bringing a baseless nuisance claim and negotiating with CenterPoint in bad faith.  "As a matter of Oklahoma law, '[e]quity will not allow one with unclean hands to benefit from [his] wrongful act.'"  *Couch v. Sheet Metal Workers Inern. Ass'n*, 2014 WL 6387359, *4 (N.D. Okla. Nov. 14, 2014) (quoting *Pub. Serv. Co. of Oklahoma v. Duncan Pub. Utils. Auth.*, 248 P.3d 400, 403 (Okla. Civ. App. 2010)).  A plaintiff's hands are clean if they "acted fairly and without fraud or deceit as to the controversy in issue."  *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814–15 (1945).

Schafer's nuisance claim alleges Line 7-1 "annoys, injures and endangers the comfort, repose, health and safety of [Schafer], his representatives and invitees . . . [and] renders him insecure in the use of his property."  [Doc. No. 1-1, p. 4, ¶ 28].  CenterPoint argues this allegation is baseless because Schafer testified in his deposition that Line 7-1 poses no threat to his personal safety, and because the current lessee testified that Line 7-1 has not caused any damage to his person or to the property.  *See* [Doc. Nos. 63-18; 63-19].  Although this testimony may undermine the strength of Schafer's nuisance claim, it does not render the claim itself fraudulent or deceitful.

CenterPoint argues Schafer negotiated in bad faith because he testified in his deposition that he did not expect CenterPoint to accept one of his counteroffers.  However, CenterPoint did

not supply the court with any context for this allegation, and the court will not conclude Schafer acted in bad faith simply because he did not expect CenterPoint to accept a counteroffer.

Based on the above, the court denies CenterPoint's request for partial summary judgment that Schafer is not entitled to equitable relief on his cause of action for unjust enrichment.

### 4. *Punitive Damages*

CenterPoint seeks partial summary judgment on Schafer's plea for punitive damages on the ground that CenterPoint is a good faith trespasser. *See* [Doc. No. 63, pp 25–27]. In Oklahoma, a good faith trespasser is liable only for actual damages. *See Edwards v. Lachman*, 534 P.2d 670, 673 (Okla. 1974). This doctrine is not well-developed in Oklahoma case law, but appears to articulate the same standard as Oklahoma's modern punitive damages statute, 23 O.S. § 9.1, which provides for the recovery of punitive damages only if the jury finds by clear and convincing evidence that the defendant acted, at a minimum, in reckless disregard of the rights of others.[11] *See id.* ("[I]n order to prove that a trespasser has acted in 'bad faith' the proof must show some element of fraud, malice or oppression, or the trespasser's actions must be shown to be actuated or accompanied with some evil intent, or must be the result of gross negligence— such disregard of another's rights—as is deemed equivalent of such intent.").

Based on the evidentiary materials presented before the court, a reasonable jury could find by clear and convincing evidence that CenterPoint acted in reckless disregard of Schafer's

---

[11] "Category I" punitive damages may be awarded when the jury finds by clear and convincing evidence that the defendant has recklessly disregarded the rights of others. 23 O.S. § 9.1(B). Category I punitive damages may not exceed the greater of one hundred thousand dollars ($100,000.00) or the amount of actual damages awarded. "Category II" punitive damages may be awarded when the jury finds by clear and convincing evidence that the defendant acted intentionally and with malice towards others. *Id.* § 9.1(C). Category II punitive damages may not exceed the greater of five hundred thousand dollars ($500,000.00), twice the amount of actual damages awarded, or the increased financial benefit derived by the defendant as a direct result of the conduct causing injury to the plaintiff. *Id.* However, if the jury also finds that there is evidence "beyond a reasonable doubt that the defendant . . . acted intentionally and with malice and engaged in conduct life-threatening to humans," the jury may award the punitive damages it deems appropriate, without regard to the statutory caps. *Id.* § 9.1(D).

rights. CenterPoint learned in late 2010 or early 2011 that it lacked a written easement across Schafer's property, but has continued to operate and maintain Line 7-1 since that time. *See* [PUMF ¶ 15]. A jury could reasonably find CenterPoint's continued, uncompensated use of Schafer's property after learning it lacked a written easement was in reckless disregard of Schafer's rights. Therefore, the court denies summary judgment for CenterPoint that Schafer is not entitled to punitive damages.

## V.    Schafer's Motion for Partial Summary Judgment [Doc. No. 66].

Schafer seeks summary judgment on CenterPoint's affirmative defenses of (1) easement; (2) prescriptive easement; (3) easement by necessity; (4) statute of limitations; and (5) waiver, estoppel, laches, and unclean hands.[12] *See* [Doc. No. 66, pp. 10–17].

### *1.    Easement*

Schafer argues CenterPoint has not presented evidence of an easement. *See* [Doc. No. 66, pp. 11–12]. An express easement is one "created by deed," and thus "requires compliance with the Statute of Frauds." *Story v. Hefner*, 540 P.2d 562, 566 (Okla. 1975). Under Oklahoma's Statute of Frauds, contracts for the sale or leasing of interests in land must be in writing and signed by the party against whom enforcement is sought. *See* 15 O.S. § 136.

Here, CenterPoint admits it does not have a current, written easement, *see* [Doc. No. 76, p. 8 ¶ 8]. In its affirmative defense, CenterPoint states that Schafer "appears to have been compensated for an easement regarding" Line 7-1. [Doc. No. 18, p. 4]. CenterPoint's business records show that, in 1948, its predecessor in interest caused an appraisal to be performed of the right of way and damages resulting by reason of the location of the pipeline through certain

---

[12]    Although Schafer's motions are styled as a *Motion for Partial Summary Judgment on Liability for Trespass Claim* and as a *Motion to Determine CenterPoint Has No Easement* [Doc. No. 66], it appears that the motions merely seek summary judgment on CenterPoint's affirmative defenses, and not on CenterPoint's liability on Schafer's trespass claim.

restricted Indian lands.  [Doc. Nos. 63-1].  CenterPoint characterizes the records as evidence of

consent, *see* [Doc. No. 76, pp. 12–13], and Schafer denies receiving payment from CenterPoint

for a right-of-way, or giving CenterPoint permission or an easement for Line 7-1 to cross his

property.  [PUMF ¶¶ 10–12].  The business records do not satisfy Oklahoma's Statute of Frauds

because they are not signed by Schafer and do not contain language of conveyance.  Moreover,

the records merely show that the right of way and damages incident thereto were appraised, not

that the appraised amount was actually paid.  Schafer is therefore entitled to partial summary

judgment in his favor on CenterPoint's affirmative defense of express easement.

### 2.    *Prescriptive Easement*

Schafer argues CenterPoint has not presented evidence of a prescriptive easement.  *See*

[Doc. No. 66, pp. 12–14].  As discussed *infra* Section IV, Part 2, the court has denied summary

judgment on CenterPoint's request for partial summary judgment on its affirmative defense of

prescriptive easement because a genuine dispute of material fact remains as to whether

CenterPoint's use of Schafer's property was initially by acquiescence or consent.  For the same

reasons, the court denies Schafer's request for partial summary judgment on CenterPoint's

affirmative defense of prescriptive easement.

### 3.    *Easement by Necessity*

Schafer argues CenterPoint has not presented evidence of an easement by necessity.  *See*

[Doc. No. 66, p. 14].  An easement by necessity arises by implication when there is "(1) unity of

title; (2) conveyance of party of the land held under unity of title; and (3) a resulting necessity for

access to the property at the time of its severance."  *Johnson v. Suttles*, 227 P.3d 664, 667 (Okla.

Civ. App. 2009).  CenterPoint concedes it does not have an easement by necessity.  *See* [Doc.

No. 76, p. 16].   Therefore, the court grants partial summary judgment for Schafer on CenterPoint's affirmative defense of easement by necessity.

### 4.   Statute of Limitations

Schafer argues there is no statute of limitations for his trespass claim under federal common law.  *See* [Doc. No. 66, p. 15].  As discussed *infra* Section IV, Part 1, the portion of Schafer's trespass claim arising after he received his certificate of competency is governed by state law, and the portion arising before he received his certificate of competency is governed by federal common law.  Because "[t]here is no federal statute of limitations [for] federal common-law actions by Indians to enforce property rights," *Cty. of Oneida*, 470 U.S. 226, 240 (1985), Schafer's motion for partial summary judgment on CenterPoint's affirmative defense of statute of limitations is granted as to the portion of Schafer's trespass claim arising before he received his certificate of competency, and is otherwise denied.

### 5.   Waiver, Estoppel, Laches, and Unclean Hands

Schafer contends that CenterPoint failed to allege sufficient factual bases in its Answer for the affirmative defenses of waiver, estoppel, laches, and unclean hands.  *See* [Doc. No. 66, pp. 16–17].  This argument constitutes a motion to strike, which must be denied as untimely under FED. R. CIV. P. 12(f) (requiring that a party move to strike a defense "before responding to the pleading, or, if a response is not allowed, within 21 days after being served with the pleading").

Schafer also argues that these affirmative defenses do not apply under federal common law.  As discussed *infra* Section IV, Part 1, the portion of Schafer's trespass claim arising after he received his certificate of competency is governed by state law, and the portion arising before he received his certificate of competency is governed by federal common law.  Under federal

law, "state statutes of limitations and the doctrine of laches do not apply to actions to recover allotments from wrongful possessors."   Cohen's Handbook § 16.03[4][d][iii] (citing *Ewert v. Bluejacket*, 259 U.S. 129, 138 (1922) (holding the doctrine of laches "cannot properly have application . . . to bar the rights of Indian wards in lands subject to statutory restrictions")).   This reasoning also applies to CenterPoint's other affirmative defenses of waiver, estoppel, and unclean hands, because they would similarly adversely affect Schafer's property rights in "restricted fee" land without authorization by federal statute or the Secretary of the Interior. Other courts have analyzed the applicability of these defenses in the context of tribal lands and have consistently rejected them because they rely on the principle that a party's conduct can validate Indian land transactions even if those transactions were not approved by the United States.   *See Oneida Indian Nation of New York v. New York*, 194 F. Supp. 2d 104, 122–26 (N.D.N.Y. 2002) (rejecting defendants' affirmative defenses of, *inter alia*, estoppel, laches, adverse possession, accord and satisfaction, unclean hands, and waiver); *see also Schaghticoke Tribe of Indians v. Kent Sch. Corp.*, 423 F. Supp. 780, 784 (D. Conn. 1976) (stating it is "plain that limitations, adverse possession, laches, and estoppel cannot bar recovery of Indian lands in a suit brought to recover protected territory").

Therefore, Schafer's motion for partial summary judgment on CenterPoint's affirmative defenses of waiver, estoppel, laches, and unclean hands is granted as to the portion of Schafer's trespass claim arising before he received his certificate of competency, and is otherwise denied.

## VI.   Schafer's Motion for a Permanent Injunction [Doc. No. 67].

Schafer seeks a permanent injunction requiring CenterPoint to remove Line 7-1 from his property.   *See* [Doc. No. 66, pp. 17–23].   "A party requesting a permanent injunction bears the burden of showing:  (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing

party; and (4) the injunction if issued, will not adversely affect the public interest." *Crandall v. City and Cty. of Denver, Colo.*, 594 F.3d 1231, 1235–36 (10th Cir. 2010).  Here, Schafer has not met his burden of showing actual success on the merits on any of his claims.  Therefore, the court denies Schafer's motion for a permanent injunction.

## VII.    Conclusion

WHEREFORE, defendant's *Motion for [Partial] Summary Judgment* [Doc. No. 63] is granted to the extent it seeks partial summary judgment that state law governs the portion of Schafer's trespass claim arising after he received his certificate of competency, and is otherwise denied.

FURTHERMORE, plaintiff's *Motion for Partial Summary Judgment on Liability for Trespass Claim* [Doc. No. 66] is granted to the extent it seeks partial summary judgment on CenterPoint's affirmative defenses of express easement and easement by necessity, and to the extent it seeks partial summary judgment on CenterPoint's affirmative defenses of statute of limitations, waiver, estoppel, laches, and unclean hands as to the portion of Schafer's trespass claim arising before he received his certificate of competency, and is otherwise denied; and plaintiff's *Motion to Determine CenterPoint Has No Easement* [Doc. No. 66] is denied.

FURTHERMORE, plaintiff's *Motion for a Permanent Injunction* [Doc. No. 67] is denied.

IT IS SO ORDERED this 25th day of April, 2018.

GREGORY K. FRIZZELL, CHIEF JUDGE